UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT (NEW HAVEN)

| | |
|---|---|
| SANTIAGO E. CARTAGENA ) | CIVIL ACTION NO. |
| ) | |
| Plaintiff ) | 3:03 CV 998 (JGM) |
| ) | |
| vs. ) | |
| ) | |
| THAMES VALLEY WATER BOTTLING ) | |
| COMPANY, INC. ) | |
| ) | |
| Defendant ) | |
| ) | APRIL 29, 2004 |

### MEMORANDUM OF LAW IN SUPPORT OF
### DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

The Defendant, THAMES VALLEY WATER BOTTLING COMPANY, INC. (hereafter the "Company"), submits this Memorandum of Law in support of its Motion for Summary Judgment pursuant to Fed.R.Civ.P. 56, for lack of any genuine issue of material fact as to Plaintiff's Sixth Cause of Action which alleges violation of 42 U.S.C. §1983.

I.     Procedural Background.

This action was commenced by Santiago E. Cartagena (the "Plaintiff") in the United States District Court for the District of Connecticut (New Haven) by Complaint dated June 3,

2003. The Complaint asserts, *inter alia*, a Sixth Cause of Action, which alleges that the Company acted under color of law in terminating the Plaintiff's employment, and that the Company is a state actor for purposes of imposing liability under 42 U.S.C. §1983. Thereafter, the Company filed its Answer and Affirmative Defenses dated June 23, 2003.

The Company is moving for summary judgment as to the Plaintiff's Sixth Cause of Action, on the basis that the Company is not a state actor and its actions are not under color of law, and it is therefore not liable under 42 U.S.C. §1983.

II.  Factual Background.

The Manitock Spring Water Company, Incorporated (hereafter "Manitock") was a privately owned corporation in the business of selling bottled water from its plant in Waterford, Connecticut. Groton Acquisitions, Inc. was a privately owned corporation formed by the City of Groton and Groton Utilities in April, 2000, at which time it purchased Manitock; thereafter, it continued the water bottling business from the plant in Waterford, Connecticut. On or about June, 2000, Groton Acquisitions, Inc. changed its name to Thames Valley Water Bottling Company, Inc. (the "Company") and continued doing business as Manitock Spring Water Company, continuing the business of selling bottled water from the plant in Waterford, Connecticut, until the business including the plant was sold to Crystal Rock Spring Water

2

Company was Grace Perkins, who had held that position with Manitock before it was purchased by Groton Acquisitions, Inc. At the time that Groton Acquisitions, Inc. purchased Manitock, the Plaintiff was one of three employees of the City of Groton hired as seasonal employees under the City's 90-day seasonal employee designation, who were paid minimum wage without any benefits. The Mayor of the City of Groton, in looking for non-seasonal openings for the three seasonal employees including the Plaintiff, suggested to the Plaintiff that he should apply for employment with the Company, since that would not be seasonal employment. Michael Cavanagh, as general manager of the Company, made all decisions concerning the Plaintiff's employment, including the decision to hire the Plaintiff. No employee of the City of Groton, including its Mayor, was involved in any way in the decisions concerning the Plaintiff's work assignments, the warnings given to the Plaintiff, or the termination of the Plaintiff's employment with the Company. The foregoing facts are supported by the Affidavit of Dennis Popp April 26, 2004 (hereafter "Popp Affidavit"), attached hereto as Exhibit A.

On or about August, 2000, Michael Cavanagh, hired the Plaintiff [Transcript of Deposition of Santiago E. Cartagena, February 26, 2004 (hereafter "Cartagena Transcript", Exhibit B), P. 30, line 24]. Michael Cavanagh was the Company's general manager and the first person that the Plaintiff reported to on his first day of work for the Company [Exh. B, Cartagena

Transcript, P. 33, line 21]. The Plaintiff's direct supervisor was Sean Mazzarella, who was directed by Michael Cavanagh [Exhibit B, Cartagena Transcript, P. 41, lines 20-21; P. 83, lines 5, 18-21]. Michael Cavanagh was the person who was making the decisions concerning the Plaintiff [Exhibit B, Cartagena Transcript, P. 56, line 11].   Sean Mazzarella gave the Plaintiff his daily driving assignments [Exhibit B, Cartagena Transcript, P. 85, line 13], and the stops to be made by the Plaintiff depended upon Michael Cavanagh [Exhibit B, Cartagena Transcript, P. 91, lines 4-5].   Sean Mazzarella would frequently scold the Plaintiff upon directives from Michael Cavanagh when they weren't satisfied with the Plaintiff's performance [Exhibit B, Cartagena Transcript, P. 96, line 25-P. 97, line 5]. Sean Mazzarella treated the Plaintiff as he was told to by Michael Cavanagh [Exhibit B, Cartagena Transcript, P. 105, line 5].   On August 10, 2001, Sean Mazzarella made the telephone call informing the Plaintiff that his employment with the Company was terminated [Exhibit B, Cartagena Transcript, P. 129, lines 20-21; Transcript of Deposition of Sean Mazzarella, February 25, 2004 (hereafter "Mazzarella Transcript", Exhibit C), P. 49, line 24].   The directive to terminate the Plaintiff's employment came from Michael Cavanagh [Exhibit C, Mazzarella Transcript, P. 49, line 24]. The persons responsible for the day to day operations of the Company were Grace Perkins and Michael Cavanagh [Exhibit C, Mazzarella Transcript, P. 40, lines 11-12].

5

LAW OFFICES • O'BRIEN, SHAFNER, STUART, KELLY & MORRIS, P.C.
P.O. BOX 310 • NORWICH, CONNECTICUT 06360 • 860-889-3855 • FAX: 860-886-6352 • JURIS NUMBER 412176

On or about January 23, 2002, the Plaintiff filed a Complaint with the Connecticut Commission on Human Rights and Opportunities and simultaneously with the federal Equal Employment Opportunities Commission. Releases of Jurisdiction were issued by both agencies on or about May, 2003, and this suit was brought by the Plaintiff by Complaint dated June 3, 2003, alleging six causes of action. The Complaint does not contain any allegations that the City of Groton was in any way involved in establishing any of the policies or practices of the Company nor that the City of Groton was involved in any of the daily operations of theCompany.

In the Sixth Cause of Action of the Complaint, Plaintiff alleges that in terminating his employment, the Company denied his right to due process in violation of 42 U.S.C. §1983, and that the Company, being "owned and operated by the City of Groton" [Complaint, Para. 454] which "manages and operates" the Company [Complaint, Para. 456], was a public actor and therefore subject to liability under that statute. Plaintiff seeks, among other things, injunctive relief, and compensatory and punitive damages. The Company has denied the allegations that there was any governmental action in its termination of the Plaintiff's employment and that any employees of the City of Groton were involved in or responsible for the actions complained of in the Complaint.

6

II.     The Law

A.     Summary Judgment Standard.

A motion for summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the and affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Soares v. University of New Haven, 154 F.Supp.2d 365, 371 (D. Conn. 2001)(internal citations and quotations omitted). The burden is on the moving party to show the absence of any genuine issue of material fact, and any ambiguities must be construed in favor of the non-moving party. Id. "[C]onclusory statements, conjecture or speculation by the party resisting the motion will not defeat summary judgment." Healey v. Shalala, 2000 WL 303439 (D. Conn. 2000)(quoting Kulak v. City of New York, 66 F.3d 63, 71 (2d Cir. 1996)); Accord, Soares, supra, @ 372. "A genuine issue of fact exists when a 'reasonable jury could return a verdict for the nonmoving party...'" Szekeres v. Schaeffer v. Howard, 2004 WL 212901 (D. Conn. 2004)(citation omitted). Summary judgment is appropriate if the non-moving party fails "to make a sufficient showing on an essential element of [its] case with respect to which [it] has the burden of proof...." Jenkins v. Area Cooperative Education Services, 248 F.Supp.2d 117,

7

122 (D. Conn. 2003)(quoting <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)).

    B.    <u>State Action Requirement Under §1983</u>.

42 U.S.C. §1983 provides that a person who is deprived of any rights secured by the Constitution and laws by an action "under color of any statute, ordinance, regulation...." may institute a civil action against the party causing that deprivation. In order to impose liability under the statute on a private party, the plaintiff must show that "the actions of the private party are 'fairly attributable' to the government, in other words, that the private party acted 'under color of state law.'" <u>Geffner v. Main Street Plus, Inc.</u>, 2000 WL 559021 (D. Conn., 2000) (citations omitted.). Three tests may be used to determine if private actions are conducted under color of law: (1) the symbiotic relationship test, which requires a plaintiff to establish the existence of a conspiracy between a private party and government, by a Complaint "that must allege that the private party and the government acted in concert," (2) the state compulsion test, which requires a plaintiff to establish governmental control of the private party "to such an extent that it [the private party] essentially acts for the state," or (3) the exclusively public function test, which requires that "the private actor perform a function that is traditionally and exclusively reserved for the government." <u>Id.</u> (citations omitted). Tests for the presence of 'state action'

8

include "a 'host of facts' which bear on whether an activity can be attributable to a state: when the state exercises its coercive power or significant encouragement, when a private actor is a willful participant in joint activity with the state, when an entity is controlled by the state or an agency thereof, when an entity has been delegated a public function by the state, when an actor is entwined with governmental policies, or when the government is entwined in the entity's management or control." Jenkins v. Area Cooperative Education Services, 248 F.Supp.2d 117, 123, (D. Conn. 2003) (citations omitted). See also, Szekeres v. Schaeffer v. Howard, 2004 WL 212901 (D. Conn. 2004), quoting Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n, 531 U.S. 288, 296, 121 S.Ct. 294, 148 L.Ed.2d 807 (2001)).

    III.    Argument.

In the instant case, the Plaintiff alleges that his termination was under color of law because the Company was owned and operated by the City of Groton [Complaint, Para. 454] which managed and operated the Company through its Mayor [Complaint, Para. 456], and was therefore a state actor. The Plaintiff fails to meet all three tests under Geffner, supra, for finding state action by a private entity. The Complaint does not allege any actions by the City of Groton compelling the Company to act in any specific ways, or that the City of Groton conspired with the Company to commit unconstitutional acts or to deprive the Plaintiff of his constitutional

9

rights, or that the Company was funded by monies received from the City of Groton, or that the Company performed a function traditionally and exclusively reserved for government.  In fact, in the Complaint, the Plaintiff alleges that the Company "is in the bottled water business and sells and distributes its products...." [Complaint, Para. 15].  The Affidavit of Dennis Popp makes it clear that the Company was in the business of selling bottled water through a private water bottling business and plant that had been in existence before being sold to Groton Acquisitions, Inc. which subsequently changed its name to the Company.

The Plaintiff fails to provide "the host of facts" (Jenkins, supra) that support his allegations that the Company was a state actor and that the Company's actions were under color of law.  In his deposition, the Plaintiff identified Michael Cavanagh, the Company's general manager, as the person who offered him a job with the Company [Exhibit B, Cartagena Transcript, P. 24, lines 23-25]; as the person to whom the Plaintiff was to report on his first day of employment [Exhibit B, Cartagena Transcript, P. 33, line 21]; as the person who was making the decisions affecting the Plaintiff [Exhibit B, Cartagena Transcript, P. 56, lines 9-11]; as the person who determined the Plaintiff's routes [Exhibit B, Cartagena Transcript, P. 91, lines 4-5]; and as the person who directed Plaintiff's immediate supervisor, operations manager Sean Mazzarella, how to treat Plaintiff [Exhibit B, Cartagena Transcript, P. 41, lines 20-21; P. 83,

10

lines 8-9; P. 96, line 25-P. 97, line 1, lines 10-11], including terminating Plaintiff's employment with the Company [Exhibit B, Cartagena Transcript, P. 131, lines 1-3]. The Plaintiff identified the Company as the entity that issued his payroll checks [Exhibit B, Cartagena Transcript, P. 38, lines 13-14] and Grace Perkins as the "lady that signs the checks" [Exhibit B, Cartagena Transcript, P. 77, lines 14-19] and as the person who would back up Michael Cavanagh's decisions [Exhibit B, Cartagena Transcript, P. 105, line 11]. Nowhere in his deposition does the Plaintiff specify any actions by the City of Groton or any of its employees controlling the operation of the Company or the personnel decisions of the Company.

In his deposition, Sean Mazzarella, formerly operations manager of the Company and immediate supervisor of the Plaintiff, testified that years before he was hired by the Company, he worked for another company that bought water from Manitock Springs Water Company [Exhibit C, Mazzarella Transcript, P. 14, lines 3-5], which became the Company [Exhibit C, Mazzarella Transcript, P. 14, line 25-P. 15, line 3]; that Mike Cavanagh as the Company's general manager and Grace Perkins "directed nearly every part of the company" [Exhibit C, Mazzarella Transcript, P. 20, lines 14-15], and that Mike Cavanagh made all of the major decisions with respect to employment and position of individuals at the Company, which were "passed down through" Mr. Mazzarella [Exhibit C, Mazzarella Transcript, P. 20, line 25-Page 26, line 1]:

11

"Ultimately who was responsible for the day-to-day operations of Thames Valley [the Company] would be Grace Perkins and Mike Cavanagh." [Exhibit C, Mazzarella Transcript, P. 40, lines 11-13]. Mr. Mazzarella also testified that he required the approval of Michael Cavanagh before he could fire an employee [Exhibit C, Mazzarella Transcript, P. 21, lines 7-17], and that the written warnings given to the Plaintiff were written at the direction and dictation of general manager Michael Cavanagh [Exhibit C, Mazzarella Transcript, P. 30, line 13-P. 31, line 4], and in one case, the written warning was written by Michael Cavanagh himself and Mr. Mazzarella signed it only as a witness [Exhibit C, Mazzarella Transcript, P. 33, lines 11-19]; the decision to terminate the Plaintiff's employment came from Michael Cavanagh [Exhibit C, Mazzarella Transcript, P. 49, line 24; P. 60, lines 7-21]. Mr. Mazzarella further testified that although the Company was owned by the City of Groton, paychecks came from the Company and Company employees did not receive any benefits from the City of Groton [Exhibit C, Mazzarella Transcript, P. 43, lines 15-22]. The only direct connection between the Company and the City of Groton that Mr. Mazzarella testified to was that the City of Groton provided management training seminars conducted by outside contractors to its managers, and that he attended those seminars as a requirement of his own employment with the Company [Exhibit C, Mazzarella Transcript, P. 42, lines 14-25].

As stated in the Affidavit of Dennis Popp, Mayor of the City of Groton, the City of Groton was one of two entities forming Groton Acquisitions, Inc., the company that purchased the water bottling business known as The Manitock Spring Water Company, Incorporated, in April, 2000, and on or about June, 2000 changed its name to Thames Water Bottling Company, which continued doing business as Manitock Spring Water Company, until its sale in January, 2003 to Crystal Rock Spring Water Company [Exhibit A, Popp Affidavit, Paras. 3-6]. However, the City of Groton did not fund any operations of the Company and did not receive any monies from the Company [Exhibit A, Popp Affidavit, Para. 7]. The Company's daily operations "including all decisions as to hiring, pay rate, promotions, work assignments, discipline and termination, were carried out by the Company's general manager, operations manager and business manager," none of whom "was an employee of the City of Groton," all of whom received paychecks issued by the Company, whose payroll was not commingled with any payroll of the City of Groton, and none of whom received any benefits from the City of Groton [Exhibit A, Popp Affidavit, Paras. 8, 9, 10]. At the time of the events alleged in the complaint, the general manager of the Company was Michael Cavanagh, who had held that position in the Manitock Spring Water Company; the operations manager of the Company was Sean Mazzarella, who was hired by Michael Cavanagh; and the business manager of the Company was

13

Grace Perkins who held that position in the Manitock Spring Water Company. [Exhibit A, Popp Affidavit, Para. 14]. No employee of the City of Groton, including the Mayor of the City of Groton, was involved in any way in any of the decisions concerning the Plaintiff's work assignments, the warnings given to the Plaintiff or the termination of the Plaintiff's employment with the Company; Michael Cavanagh, the Company's general manager, made all decisions concerning the Plaintiff's employment with the Company. [Exhibit A, Popp Affidavit, Para. 14].

There are no factual allegations in the Complaint, nor any statements in the Cartagena Transcript (Exhibit B) or Mazzarella Transcript (Exhibit C), or in the Popp Affidavit (Exhibit A), that provide any information sufficient to meet any of the Geffner or Jenkins tests, supra, for finding state action by a private entity, i.e, that the City of Groton compelled the actions of the Company, or that the City of Groton and the Company conspired in any way with respect to the conditions and termination of the Plaintiff's employment, or that the Company performed a traditionally governmental function. On the contrary, the Cartagena and Mazzarella Transcripts and the Popp Affidavit make it clear that the daily operations of the Company were directed by its general manager Michael Cavanagh, who made the decisions to hire and to fire the Plaintiff, and that the Company sold bottled water from its Waterford plant, and that the water bottling operation existed long before the Company came into existence. Conspicuously absent from the

14

Complaint, the Cartagena and Mazzarella Transcripts, and the Popp Affidavit are any facts indicative of control of the Company by the City of Groton or of compulsion of the Company's actions by the City of Groton. In that regard, only the Plaintiff's unsupported accusations that the City of Groton controlled the actions of the Company, mere "conclusory statements" and "conjecture" [Healey v. Shalala, supra] appear in the Complaint and in the Cartagena Transcript. These are insufficient to support the assertion that the Company was acting under color of law or was a state actor when it terminated the Plaintiff's employment.

For the foregoing reasons, the Defendant Thames Valley Water Bottling Company, Inc. d/b/a Manitock Springs, moves this Court find to enter summary judgment in its favor as to the Sixth Cause of Action of the Complaint.

                              THAMES VALLEY WATER BOTTLING
                              COMPANY, INC., Defendant


                              By *Richard J. Pascal*
                              Richard J. Pascal
                              O'Brien, Shafner, Stuart, Kelly & Morris, P.C.
                              138 Main Street, Norwich, CT 06360
                              Phone: (860) 889-3855
                              Fax: (860) 886-6352
                              Fed. Bar #ct03151
                              Its Attorney
                              Email: osskmrjp@snet.net

15

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT (NEW HAVEN)

|  |  |
|---|---|
| SANTIAGO E. CARTAGENA ) | CIVIL ACTION NO. |
| ) | |
| Plaintiff ) | 3:03 CV 998 (JGM) |
| ) | |
| vs. ) | |
| ) | |
| THAMES VALLEY WATER BOTTLING CO., ) | |
| INC. ) | |
| ) | |
| Defendant ) | |

STATE OF CONNECTICUT      )
                          ) ss: Groton, April 26, 2004
COUNTY OF NEW LONDON      )

### AFFIDAVIT OF DENNIS POPP

I, DENNIS POPP, being duly sworn, depose and say that:

1. I am above the age of eighteen (18) years and understand and believe in the obligations of an oath.

2. I am the Mayor of the City of Groton, and as the Mayor, I am familiar with the operations of the City of Groton and can speak of them from my personal experience, knowledge and understanding.

EXHIBIT A

3. Groton Acquisitions, Inc., was a privately owned corporation formed by the City of Groton and Groton Utilities in April, 2000.

4. The Manitock Spring Water Company, Incorporated (hereafter "Manitock") was a privately owned corporation in the business of selling bottled water from its plant in Waterford, Connecticut.

5. Manitock, including the plant in Waterford, Connecticut, was purchased by Groton Acquisitions, Inc., in April, 2000; Groton Acquisitions, Inc. continued the business of selling bottled water from the plant in Waterford, Connecticut.

6. On or about June, 2000, Groton Acquisitions, Inc. changed its name to Thames Valley Water Bottling Company (hereafter the "Company"), and the Company, doing business as Manitock Spring Water Company, thereafter continued the business of selling bottled water from the plant in Waterford, Connecticut, until the business including the plant, was sold to Crystal Rock Spring Water Company, a private stock corporation, on or about January 31, 2003.

7. No City of Groton monies were used in the operation of the Groton Acquisitions, Inc. or the Company; no monies from Groton Acquisitions, Inc. or the Company were distributed or paid to the City of Groton.

2

8.  The Company's daily operations, including all decisions as to hiring, pay rate, promotion, work assignments, discipline and termination were carried out by the Company's general manager, operations manager and business manager, none of whom was hired by the City of Groton.

9.  None of the Company's employees, including its general manager, operations manager and business manager, was an employee of the City of Groton, the Company issued its own paychecks to its employees, and there was no commingling of the payrolls of the Company and the City of Groton.

10. None of the Company's employees, including its general manager, operations manager and business manager, received any benefits from the City of Groton, although the Company had required its management trainees to attend management training seminars produced by independent contractors that the City of Groton provided to its own management trainees.

11. At the time of the events alleged to have taken place in this litigation, the general manager of the Company was Michael Cavanagh, who had held that position at Manitock prior to its purchase by Groton Acquisitions, Inc.; the operations manager of the Company was Sean

3

Mazzarella, who was hired by Michael Cavanagh; and the business manager was Grace Perkins, who had held that position at Manitock prior to its purchase by Groton Acquisitions, Inc.

12. At the time Groton Acquisitions, Inc. purchased Manitock, the Plaintiff was one of three employees of the City of Groton, hired as seasonal employees by the City of Groton under its 90-day seasonal employee designation, who were paid a minimum wage without any benefits.

13. I was looking for non-seasonal openings for the three seasonal employees, of whom the Plaintiff was one, and I suggested to the Plaintiff that he should apply for employment with the Company since that would not be a seasonal employment.

14. Michael Cavanagh, as general manager of the Company, made all decisions concerning the Plaintiff's employment, including the decision to hire Plaintiff; no employee of the City of Groton, including me as Mayor, was involved in any way in the decisions concerning the Plaintiff's work assignments, the warnings given to the Plaintiff, or the termination of the Plaintiff's employment with the Company.

4

15. I make this affidavit in support of the Motion for Summary Judgment made in this case by Thames Valley Water Bottling Company.

Dennis Popp

Subscribed and sworn to before me this 26 day of April, 2004.

Notary Public
My commission expires:

DEBRA PATRICK
NOTARY PUBLIC
MY COMMISSION EXPIRES JUNE 30, 2004

Mcr\Forms\Federal\MotionSummaryJudgmentMemoLawPoppAffidavit

5