# UNITED STATES DISTRICT COURT
# DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| SANTIAGO E. CARTAGENA,<br>Plaintiff, | : | CIVIL CASE NO. 3:03cv998(JGM) |
| VS. | : | |
| THAMES VALLEY WATER<br>BOTTLING CO., INC. D/B/A<br>MANITOCK SPRINGS<br>Defendant. | : | JUNE 25, 2004 |

**MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

*1. Background*

The defendant's narrative of the history surrounding the purchase of The Manitock Spring Water Company, Incorporated omits the significant public sector involvement in the transaction. Further, the defendant misstates the benefits that inured to the City of Groton from the sale of The Manitock Spring Water Company, Incorporated.[1]

It is not disputed that before the City of Groton purchased The Manitock Spring Water Company, Incorporated, it was a private company without any relevant public sector

[1] The defendant asserts at page 3 of its brief that "no monies of Groton Acquisition, Inc. or of the Company were distributed or paid to the City of Groton". Upon the sale of The Manitock Spring Water Company, Incorporated, the City of Groton authorized the expenditure of up to $50,000.00 to purchase software for one of its municipal agencies with the monies coming from a portion of the proceeds received from the sale of Manitock."). See *Exhibit 7.*

participation. But the purchase of The Manitock Spring Water Company, Incorporated by Groton Acquisition, Inc. was fraught with public sector involvement. On June 5, 2000, the City of Groton by ordinance authorized "[a] sum in the total amount not to exceed $2,419,000.00"... "to be expended for the purchase of substantially all of the assets including without limitation that certain real property located at 341 Boston Post Road, Waterford, Connecticut and the business and the assumption of specific liabilities of The Manitock Spring Water Company, Incorporated by Groton Acquisition Inc[2]., a wholly owned subsidiary of the City of Groton..." *Exhibit 1.* Groton Acquisition Inc. was, as the ordinance recited, a wholly owned subsidiary of the City of Groton. The authority for the City of Groton to enter into the business of selling bottled water under a separate corporate structure is derived from *Public Act No. 99-188* of the Connecticut General Assembly. , *Exhibit 12.* Section 1 of the Act provides, in relevant part, "[a]ny water company... may engage in the sale of bottled water or establish an entity under Chapter 601 of the general statutes for the purpose of engaging in the sale of bottled water within or outside its franchise area..." And, Section 2 of the Act goes on to state, "[a]ny municipality may exercise the authority provided for in subsection (a) of this section notwithstanding the provisions of any special act, municipal charter or home rule ordinance. A municipality shall establish such entity upon

[2] The defendant refers to Groton Acquisition Inc. as Groton Acquisitions Inc. The relevant documents of the City of Groton refer to the entity as Groton Acquisition Inc.

approval of the chief executive officer of the municipality and by adoption of an ordinance approved by vote of two-thirds of the members present at a meeting of the legislative body of the municipality..." *Public Act No. 99-188*, *Exhibit 12.*

The legislative history behind this bill demonstrates that it was enacted to allow "private and municipal water utilities to establish stock corporations to sell bottled water...A municipality can establish the corporation notwithstanding its charter, home rule ordinances, or special act. The establishment requires the approval of the municipality's chief executive officer. It also requires the adoption of an ordinance by a vote of two-thirds of the members of its legislative body present at a meeting..." *Exhibit 14 - OLR Bill Analysis.* In particular, Alexander B. Chisolm, at the time the Director of Utilities for Groton Utilities, an agency of the City of Groton, testified before the Planning and Development Committee that "This bill allows Groton to create a separate corporate structure to operate a bottled water business. *The earnings form this business would provide the City of Groton with additional revenue, which would enable the City to upgrade facilities without burdening rate payers..."* (Emphasis added). *Exhibit 13 - Report on Bills Favorably Reported by Committee.*

Based on the requirements of *Public Act 99-188*, the City of Groton embarked on its venture into the bottled water business. *Public Act 99-188* provided the City of Groton with the legal underpinnings necessary to engage in the business of selling bottled water.

However, the endeavor needed the approval of the chief executive officer of the municipality and the adoption of an ordinance approved by vote of two-thirds of the members its city council. "A municipality shall establish such entity upon approval of the chief executive officer of the municipality and by adoption of an ordinance approved by vote of two-thirds of the members present at a meeting of the legislative body of the municipality." *Public Act 99-188.*

Ordinance No. 126 (*Exhibit 1*) was enacted by the City of Groton pursuant to the legislative prescriptions contained in *Public Act 99-188*. Groton Acquisition Inc. was established as a "wholly-owned subsidiary of the City of Groton". The Mayor of Groton, Dennis Popp, who also served as the Chairperson of the Groton Utilities Commission, a public agency of the City of Groton, was named the Chairman of the Board of Groton Acquisition Inc. He was joined on the Board of Directors of Groton Acquisition Inc. by Julio Leandri, likewise a member of Groton Utilities Commission, and Glenn Wilson, the Executive Director of the Groton Utilities Commission. *Exhibit 2 and Exhibit 3*.

Not only did Ordinance No. 126 authorize the City of Groton to enter into the business of selling bottled water, it allocated up to $2,419,000.00 of city revenues for the purchase of an existing bottled water company, The Manitock Spring Water Company, Incorporated. The stated purpose for this endeavor of the City of Groton was to provide the City of Groton with

additional revenue from the earnings from this business. *Exhibit 13*. "It's a money maker now and it'll continue to make money... [money that will go] into the city's coffers and offset taxes..." Exhibit 5 (Quote of Mayor Popp on the purchase of The Manitock Spring Water Company, Incorporated).

The defendant in its memorandum emphasizes, "[n]o monies of the City were used in the operation of Groton Acquisitions Inc. nor in the operation of the company." What the defendant doesn't reveal is that $2,419,000.00 of city funds were expended to purchase The Manitock Spring Water Company, Incorporated. The defendant's further assertion that "no monies of Groton Acquisitions Inc. or of the Company were distributed or paid to the City of Groton" is downright misleading. With the sale of The Manitock Spring Water Company, Incorporated by the City of Groton, the City of Groton authorized the expenditure of $50,000.00 for the purchase of software for one of its municipal agencies. Additionally, the City of Groton has placed the real estate on which the business was conducted for sale, and has retained for itself the final approval for any sale. *Exhibit 8*. Further, at the time the City of Groton approved the purchase of The Manitock Spring Water Company, Incorporated it did not expect to receive revenues immediately because the business was at a break-even status. However, once it turned profitable, the city had every expectation of reaping the profits for the benefit of its taxpayers. "After breaking even the first two years, Groton

officials expect to turn a tidy $300,000 profit in the third year..." "Money that will go into the city's coffers...and offset taxes." *Exhibit 5.*

There isn't the slightest doubt that the City of Groton had the ultimate control, whether it chose to exercise it or not, over the governance of Groton Acquisition Inc. Three city officials comprised its board of directors. Its sole shareholder was the City of Groton. The city's approval for the purchase of The Manitock Spring Water Company, Incorporated by Groton Acquisition Inc. was required. And it was the City of Groton that ultimately decided to sell the business. *Exhibit 9.* A public act of the Connecticut General Assembly was required, not only to authorize the City of Groton to engage in the sale of bottled water, but to form a stock corporation by which to conduct the business. This authority was vested in the City of Groton, not some private entity.

On August 28, 2000, the plaintiff accepted employment with the defendant. And on August 10, 2001, the defendant informed the plaintiff by a telephone communication that his employment had been terminated.

The plaintiff concedes that the day to day operations of Groton Acquisition Inc. and its successor, Thames Valley Water Bottling Co., including the termination of his employment was managed by employees of Groton Acquisition Inc. But this management was by matter of choice, not by law. The management of the day to day operations by employees of

Thames Valley Water Bottling Co. does not alter the fact that City of Groton possessed the complete dominion, ownership and control of Groton Acquisition Inc. and its successor, Thames Valley Water Bottling Co.

*II. Discussion*

*a. Legal Standard, Motion for Summary Judgment*

A motion for summary judgment may not be granted unless the court determines that there is no genuine issue of material fact to be tried and the facts as to which there is no such issue warrant judgment for the moving party as a matter of law. See *Cronin v. Aetna Life Insurance Co.*, 46 F.3d 196, 202 (2d Cir. 1995) ; *Chambers v. TRM Centers Corp.*, 43 F.3d 29, 36 (2d Cir. 1994); *Stern v. Trustees of Columbia University in City of New York*, 131 F.3d 305 (2d Cir. 1997) ("It is of course well established that a motion for summary judgment may not be granted unless the court determines that there is no genuine issue of material fact to be tried and that the facts as to which there is no such issue warrant judgment for the moving party as a matter of law. See Fed.R.Civ.P. 56(c). In assessing the record to determine whether there is such an issue, the court is required to resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought. . ."); Kerzer v. Kingley Mfg., 156 F.3d 396, 400 (2d Cir. 1998) ("Summary judgment is inappropriate unless 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the

affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.' Fed.R.Civ.P. 56(c). On a motion for summary judgment, the moving party has the burden of showing the absence of a genuine issue of material fact, and the district court's task is limited to discerning whether there are any genuine issues of material fact to be tried, not to deciding them . . . In deciding such a motion, we, . . . must construe the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in its favor. . . Conclusory allegations, conjecture, and speculation, however, are insufficient to create a genuine issue of fact. . ."). The burden rests on the party seeking summary judgment, the moving party, to demonstrate that no genuine factual dispute exists. *Kerzer v. Kingley Mfg.*, supra at p. 400. In assessing the record to determine whether there is a genuine issue as to any material fact, the court is required to resolve all ambiguities and factual inferences in favor of the party against whom summary judgment is sought. The inferences to be drawn from the underlying facts revealed in material such as affidavits, exhibits, interrogatory answers, and depositions must be viewed in the light most favorable to the party opposing the motion. See *Stern v. Trustees of Columbia University in City of New York,* supra at p. 312; *Chambers v. TRM Copy Centers Corp.,* 43 F.3d 29, 36 (2d Cir.1994).

In deciding a motion for summary judgment, the court cannot try issues of fact, but can only determine whether there are issues of fact to be tried. *Kerzer v. Kingley Mfg.*, supra at p.

400; *Cronin v. Aetna Life Insurance Co*., supra at p. 203. If, as to the issue on which summary judgment is sought, there is any evidence in the record from any source from which a reasonable inference can be drawn in favor of the non-moving party, summary judgment is improper. *Chambers v. TRM Copy Centers Corp*., supra at p. 37; *Lafond v. General Physics Services Corp.,* 50 F.3d 165, 171 (2d Cir. 1995). The trial court's function at this stage is to identify issues to be tried, not decide them. *Graham v. Long Island R.R.,* 230 F.3d 34, 38 (2d Cir. 2000).

*b. Defendant As Public Actor*

The substance of the plaintiff's cause of action raising a claim under *Title 42 U.S.C. § 1983* is that the defendant violated his right to due process when it terminated his employment without prior notice and an opportunity to be heard. The issue presented by the defendant's motion for summary judgment is whether the plaintiff was a public employee when he worked for the defendant. "The right to due process established by the *Fourteenth Amendment* applies only to government entities, and an attempt to vindicate that right through a *Section 1983* claim can be lodged only against government entity...Accordingly, the ultimate issue in determining whether a person may bring suit under *§ 1983* is the same question posed in cases arising under the *Fourteenth Amendment*: is the alleged infringement of federal rights fairly attributable to the State?" *Horvath v. Westport Library Ass'n*, 362 F.3d 147, 150, 151 (2d Cir. 2004) (Internal citations and quotations omitted).

The threshold inquiry for plaintiffs' constitutional claims is whether Groton Acquisition Inc. can be considered a state actor or instrumentality acting under color of state law. "What constitutes state action has been variously described by courts as 'an extremely difficult question,' 'murky waters,' 'obdurate,' and a 'protean concept,' see *Krynicky v. University of Pittsburgh*, 742 F.2d 94, 97 (3rd Cir. 1984) (citations omitted), as the Supreme Court has grappled with differing factual circumstances, most recently in *American Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 143 L. Ed. 2d 130, 119 S. Ct. 977 (1999). The Court acknowledged in *Lebron v. National RR Passenger Corp*., 513 U.S. 374, 130 L. Ed. 2d 902, 115 S. Ct. 961 (1995), that 'it is fair to say that 'our cases deciding when private action might be deemed that of the state have not been a model of consistency.'' Id. at 378 (quoting Edmonson v. Leesville Concrete Co., 500 U.S. 614, 632, 114 L. Ed. 2d 660, 111 S. Ct. 2077 (1991) (O'Connor, J., dissenting)." *Hack v. President & Fellows of Yale College*, 237 F.3d 81, 83 (2d Cir. 2000).

"As a general matter, defining the limits of the State's presence tends to be a difficult endeavor because of the protean character of contemporary government activity. The Supreme Court has noted something like this in its most recent substantial statement on state action doctrine:

> What is fairly attributable [to the government] is a matter of normative judgment, and the criteria lack rigid simplicity. From the range of circumstances that could point toward the State

> behind an individual face, no one fact can function as a necessary condition across the board for finding state action; nor is any set of circumstances absolutely sufficient, for there may be some countervailing reason against attributing activity to the government.

*Brentwood Academy v. Tennessee School Athletic Ass'n*., 531 U.S. 288, 295-96, 148 L. Ed. 2d 807, 121 S. Ct. 924 (2001) ("Brentwood Academy"). Not surprisingly, therefore, 'there is no single test to identify state actions and state actors.' *Id.* at 294. Rather, there are 'a host of facts that can bear on the fairness of . . . an attribution' of a challenged action to the State. *Id.* at 296." *Horvath v. Westport Library Ass'n*, 362 F.3d at 151.

Under the analysis employed by the Supreme Court in *Lebron,* the defendant, Groton Acquisition Inc., and its successor, Thames Valley Water Bottling Co. is not, in reality, a private entity but is, rather, an agency or instrumentality of the City of Groton for the purpose of individual constitutional rights. "In Lebron, the Supreme Court determined that Amtrak was a governmental entity:

> We hold that where, as here, the Government creates a corporation by special law, for the furtherance of governmental objectives, and retains for itself permanent authority to appoint a majority of the directors of that corporation, the corporation is part of the Government for purposes of the First Amendment.

*Id. 513 U.S. at 400.* In the wake of Lebron, other courts have concluded that the Court set forth a three-prong standard: only if (1) the government created the corporate entity by special law, (2) the government created the entity to further governmental objectives, and (3) the government retains "permanent authority to appoint a majority of the directors of the corporation" will the corporation be deemed a government entity for the purpose of the state action requirement. *Id. at 400." Hack v. President & Fellows of Yale College*, 237 F.3d at 83, 84.

It is clear that the plaintiff has satisfied the first two elements of the *Lebron* standard. Although entitled a public act, the creation of Groton Acquisition Inc. was by special law. There can be little doubt that prior to the enactment of *Public Act 99-188* the City of Groton could not engage in the sale of bottled water through a wholly owned stock corporation. The legislative history of the Public Act plainly evidences the legislative intent to enable the City of Groton to venture into the bottled water business. "This bill permits municipal water companies to establish stock corporations, pending the approval of the municipality's chief executive officer and adoption of authorizing ordinance of two-thirds of the members present at its legislative body meeting...A municipality can establish the corporation notwithstanding its charter, home rule ordinances, or special act. The establishment requires the approval of the municipality's chief executive officer. It also requires the adoption of an ordinance by a vote of two-thirds of

the members of its legislative body..." *Exhibit 14*. "The bill allows Groton to create a separate corporate structure to operate a bottled water business." *Exhibit 13*.

Additionally, pursuant to *Public Act 99-188*, the creation of Groton Acquisition Inc. required the approval of the chief executive officer of the City of Groton and the passage of an ordinance by a two-thirds favorable vote of the legislative body of the City of Groton. The governmental steps required for creating Groton Acquisition Inc. demonstrates that Groton Acquisition Inc. was established by special law.

The second *Lebron* standard has similarly been met by the evidence submitted by the plaintiff in this case. Although the provision of bottled water may not be a normal governmental responsibility, the purpose underlying the action of the General Assembly in allowing the City of Groton to engage in the bottled water business satisfies the "furtherance of governmental objectives" element of the *Lebron* test. Representative Winkler, speaking in favor of the passage of *Public Act 99-188*, opined, "HB 6944 is a pro-consumer measure. Currently, Groton residents who use bottled water are at the mercy of a monopoly. This legislation would effectively end the monopoly and give consumers a choice." Also, the legislation allows the City of Groton with a source of additional revenues which could be used to upgrade its facilities without burdening its taxpayers. "The bill allows Groton to create a separate corporate structure to operate a bottled water business. The earnings from this business would provide the City of Groton with addition

revenue, which would enable the City to upgrade facilities without burdening rate payers." *Exhibit 13.*[3]

Likewise, the third element of the *Lebron* standard has been satisfied; "the government retains permanent control to appoint a majority of the directors of the corporation. The City of Groton is the sole owner of Groton Acquisition Inc. It necessarily, as a matter of corporate law, Conn. Gen. Stat. § 33-712, has the complete and permanent control to name the board of directors Groton Acquisition Inc. This authority possessed by the city in the present case is not shared with a private entity, as was the case in *Lebron, Hack v. President & Fellows of Yale College* and *Horvath v. Westport Library Ass'n.* The legal authority allowing for the formation of Groton Acquisition Inc. is derived from *Public Act No. 99-188.* This act allows for the City of Groton to "establish an entity under Chapter 601 of the general statutes for the purpose of engaging in the sale of bottled water within or outside its franchise area..." The City of Groton, in the exercise of this power, formed Groton Acquisition Inc. There simply can be no legitimate dispute that Groton Acquisition Inc. is owned and controlled exclusively by the City of Groton.[4]

---

[3] If there was no governmental objective to be obtained by this endeavor, then why did the City of Groton enter into this business in the first place? What was its purpose behind the purchase of The Manitock Spring Water Company, Incorporated if it was not to derive a new source of revenues.

[4] As an example, as previously discussed, the authority to buy and sell The Manitock Spring Water Company, Incorporated required the express approval of Groton's City Council despite the claim that Groton Acquisition Inc. is a private entity.

As such, in spite of the insistence of the defendant that Groton Acquisition Inc. is a private entity, the pervasive entwinement of public institutions and public officials in its formation and composition qualifies it as a public actor. *Horvath v. Westport Library Ass'n*, 362 F.3d at 153, 154. "Entwinement will support a conclusion that an ostensibly private organization ought to be charged with a public character and judged by constitutional standards; entwinement to the degree shown here requires it." *Brentwood Academy v. Tennessee School Athletic Ass'n,* 531 U.S. 288, 289, 148 L. Ed. 2d 807, 121 S.Ct. 924 (2001).

As previously discussed, the designation of Groton Acquisition Inc. as a private entity does not resolve the issue as to whether the plaintiff's termination involved state action. "[E]xamples from our cases are unequivocal in showing that the character of a legal entity is determined neither by its expressly private characterization in statutory law, nor by the failure of he law to acknowledge the entity's inseparability form recognized government officials or agencies." *Id.,* supra. State action may be found if there is such a close nexus between the government and the private entity that "seemingly private behavior may be fairly treated as that of the State itself." *Id.,* supra (Internal quotes and citations omitted).

The defendant also stresses that no official of the City of Groton played a role in the termination of the plaintiff's employment. It urges that the decision to fire the plaintiff was

---

made by employees of Groton Acquisition Inc. without the involvement of officials of the City of Groton. The fact that the actual dismissal of the plaintiff was made by Groton Acquisition Inc. and not by the City of Groton itself, or any other governmental agency, is not dispositive on the issue of the defendant's public actor status. It is not necessary for the City to have directly participated in the plaintiff's termination to find that the dismissal was the result of state action. It is sufficient that by virtue of its function and its relationship to the City of Groton, that Groton Acquisition Inc. is a public actor for constitutional purposes. See *Janusaitis v. Middlebury Volunteer Fire, Etc.*, 607 F. 2d 17, 23 (1979)("Thus, while it is true that the actual dismissal of appellant was made by the Chief with the concurrence of the Executive Committee, and not by the Town itself, it is not necessary that the Town participate to find the dismissal a form of state action. It is enough that by virtue of its function and its relationship to the Town, the MVFD is an agency of the state.") See also *Goldstein v. The Chestnut Ridge Vol. Fire Co.*, 218 F. 3d at 348 ("...when it has been established that the State has empowered, or is permitting, a private actor to homestead on territory that has heretofore been the exclusive, traditional province of the State, there need be no specific demonstration of a nexus to the alleged constitutional violation...If the actor were held to be performing a public function for purposes of state action doctrine, then it would be difficult to conclude that personnel decisions reached during the performance of that public function were not subject to constitutional strictures.")(Internal

citations and quotations omitted). See also *Horvath v. Westport Library Ass'n*, 362 F.3d at 154 ("The Library urges that the decision to terminate Horvath was made solely by the Library's Director who, although appointed by the trustees, is not herself a public official. This is significant because a finding of state action must be premised upon the fact that 'the State is *responsible* for the *specific conduct* of which the plaintiff complains.' *Blum v. Yaretsky,* 457 U.S. 991, 1004, 73 L. Ed. 2d 534, 102 S. Ct. 2777 (1982) (first emphasis in original; second emphasis added). In *Brentwood Academy,* however, the Supreme Court has cautioned that the concept of responsibility is not to be read narrowly in the context of the state action inquiry. That is, the State need not have coerced or even encouraged the events at issue in the plaintiff's complaint if 'the relevant facts show pervasive entwinement to the point of largely overlapping identity' between the State and the entity that the plaintiff contends is a state actor. 531 U.S. at 303; *see also St. Ledger v. Area Coop. Educ. Servs.,* 228 F. Supp. 2d 66, 72 (D. Conn. 2002) (holding that pervasive entwinement with the State made educational center 'a state entity for all purposes'); *accord Jenkins v. Area Coop. Educ. Servs.,* 248 F. Supp. 2d 117, 123 (D. Conn. 2003)").

*III. Conclusion*

The pervasive entwinement of the City of Groton and the Groton Acquisition Inc. mandates that it be charged with the responsibility of a public actor. In the very least there exist material issues of fact that are in dispute regarding the public actor status of the defendant, Groton Acquisition Inc., and, therefore, summary judgment for the defendant is not appropriate.

THE PLAINTIFF – SANTIAGO CARTAGENA

BY________________________________________

Thomas W. Bucci, for
WILLINGER, WILLINGER & BUCCI, P.C.
855 Main Street
Bridgeport, CT 06604
Tel: (203) 366-3939
Fax: (203) 337-4588
Fed. Bar #ct07805
Email: thomasbucci@earthlink.net

**CERTIFICATION**

I hereby certify that a copy of the foregoing *Plaintiff's Memorandum in Opposition to Defendant's Motion for Summary Judgment* has been sent, by First Class Mail, postage prepaid, on this 25th day of June, 2004, to:

Richard J. Pascal, Esquire
O'BRIEN SHAFNER, STUART, KELLY
& MORRIS, P.C.
138 Main Street
P.O. Box 310
Norwich, CT 06360
Tel: (860) 889-3855
Fax: (860) 886-6352
Fed. Bar # ct03151

____________________________________
Thomas W. Bucci
Willinger, Willinger & Bucci, P.C.